# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ANTWAN REID, SR.,

    Petitioner,

Case No. 3:05-cv-109

  -vs-

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

JAMES HAVILAND, Warden,

    Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 22) to the Magistrate Judge's Report and Recommendations (Doc. No. 19) recommending that the Petition for Writ of Habeas Corpus be dismissed with prejudice. The General Order of Reference for the Dayton location of court permits a Magistrate Judge to reconsider decisions or reports and recommendations when objections are filed.

### First Objection: The Fifth Ground for Relief Was Not Decided

Petitioner's first objection is that the Magistrate Judge erred in concluding that he had abandoned the Third, Fourth, and Fifth claims pleaded in the original Petition when he did not include them in his Amended Petition (Objections, Doc. No. 22 at 1). He now states that in fact he has abandoned the Third and Fifth claims from the original Petition, but included the Fourth claim

-1-

in the Amended Petition as his Fifth Ground for Relief. He objects further that the Report and Recommendations do not analyze this Fifth Ground for Relief.

The Amended Petition contains no fifth ground for relief in the body of the pleading (Doc. No. 9-3). However, in the Memorandum in Support of Amended Petition for Writ of Habeas Corpus (Doc. No. 9-4) beginning at page 22 Petitioner argues as a Fifth Ground for Relief that he was denied the effective assistance of appellate counsel in that his appellate counsel failed to raise as assignments of error that his trial counsel was ineffective for "1) failing to subject the State's case to meaningful adversarial challenge; 2) failing to adequately investigate and prepare for trial; and 3) failing to prevent cumulative error." *Id*. Further in the Memorandum, he develops these arguments as follows. He then particularizes these general complaints as follows.

First of all, he says that trial counsel was ineffective for failing to learn that a crucial eyewitness, Patricia Woods, intended to exercise her Fifth Amendment privilege against self-incrimination when called to testify. The testimony was allegedly crucial because it would have had Petitioner running away from the scene of the crime[1] before any gun shots were fired. Petitioner asserts there was an alternative way to put this testimony before the jury in that Ms. Woods was charged with aggravated robbery arising out of the same incident, testified at her own trial, and gave the testimony Petitioner believes should have been presented in his own case. Secondly, he claims trial counsel was ineffective for failing to present an expert on eyewitness identification. He claims appellate counsel was ineffective for failing to raise these trial counsel failures on appeal.

Before a petitioner can obtain federal habeas corpus review of a claim, he must present it to

---

[1] Petitioner was convicted of aggravated robbery and aggravated murder, both with firearm specifications.

the state courts for their consideration, if they provide him with a method for doing so. In Ohio, the proper way to present a claim of ineffective assistance of appellate counsel is by way of moving under Ohio App. R. 26(B) to reopen the direct appeal. Petitioner did so in the manner prescribed by Ohio law and presented these two claims. The Ohio Court of Appeals decided the merits of these two claims in a Decision and Entry of December 10, 2003 (Return of Writ, Exhibit 26 ). As to both claims, the court decided that trial counsel had not been ineffective. With respect to the failure to obtain an expert witness on the unreliability of eyewitness identification, the court held

> The weakness of the identification testimony at Reid's trial was addressed in his trial and on appeal. Numerous state's witnesses were cross-examined about the inconsistencies and uncertainties in their testimony. We have no doubt that the jury was aware of the discrepancies in the witnesses' testimonies and took these discrepancies into account in reaching its verdict. An expert on identification testimony may have reinforced the notion that eyewitness testimony can be unreliable, but we think this fact must have already been apparent to the jury in this case. As such, we cannot conclude that, but for the lack of an expert, the result of the trial would have been different. We are also reluctant to call counsel's decision not to call an expert on identification testimony an "error" as counsel could reasonably have concluded that the discrepancies among the eyewitnesses and the unreliability of the eyewitness testimony had been sufficiently addressed.

*Id.* at 3.

With respect to the failure to introduce Patricia Woods' testimony from her own trial, the court held:

> The two partial transcripts that Reid has attached to his brief clearly do not contain all of Woods' relevant testimony and do not support his version of events to the extent he suggests. In one of the transcripts, Woods refers to Reid "running around toward the back of [the victim's] car," but her testimony does not suggest this happened at the precise moment that shots were fired. Her testimony in the other transcript suggests that Reid and another man, his co-defendant, were standing alongside the victim's car door when the shooting

>began. Thus it is unclear that Woods' testimony would have helped Reid's defense, and we cannot conclude that there was a reasonable likelihood that this evidence would have changed the outcome of the trial.

*Id.* at 3-4.

To summarize, the Court of Appeals decided it had not been ineffective assistance of trial counsel to omit the expert testimony and the Woods' testimony from her own trial. Since it was not ineffective assistance of trial counsel to make these two omissions, it was therefore not ineffective assistance of trial counsel to fail to raise these two claims on appeal.

The Supreme Court has recently elaborated on the standard of review of state court decisions on claims later raised in federal habeas corpus:

>The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To these ends, § 2254(d)(1) provides:
>
>>(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>>"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."
>
>As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404-405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405-406, 120 S. Ct. 1495. The court

-4-

> may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 122 S. Ct. 1843, 1849-50, 152 L. Ed. 2d 914 (2002).

In this case the Ohio Court of Appeals correctly identified the relevant federal legal precedent in *Strickland v. Washington*, 466 U.S. 668 (1984). As to the prejudice prong of Strickland, the test is whether counsel's errors have likely undermined the reliability of, or confidence in, the result. *West v. Seabold*, 73 F. 3d 81, 84 (6th Cir. 1996), citing *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won." *United States v. Morrow,* 977 F. 2d 222 (6th Cir. 1992). Defects in assistance that have no probable effect on the trial's outcome do not establish a constitutional violation. *Mickens v. Taylor,* 535 U.S. 162, 166 (2002). The Court of Appeals determined that the two omissions had no likely effect on the outcome: the jury had already been made aware of the problems with eyewitness testimony without an expert and Ms. Woods' testimony was not necessarily helpful. The Court of Appeals' decision was not an unreasonable application of *Strickland v. Washington* and it may therefore not be reversed by this Court.

Of course, even if Petitioner had shown ineffective assistance of trial counsel in these two omissions, he would have had a further hurdle to overcome: since these claims were not made on

either direct appeal or in a post-conviction petition under Ohio Revised Code § 2953.21, Petitioner would have had to demonstrate in addition that it was ineffective assistance of appellate counsel not to raise the claims. on direct appeal. An appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *See Smith v. Murray*, 477 U.S. 527, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986). Petitioner has not demonstrated that these two claims would have had more merit than the claims appellate counsel actually did raise. Under those circumstances, his Fifth Ground for Relief is without merit.

**Second Objection: Grounds Three and Four Are Not Barred by the Statute of Limitations**

The Magistrate Judge denied Petitioner leave to amend his Petition to add the new Third and Fourth Grounds for Relief because they do not "relate back" to the original claims and are therefore barred by the one-year statute of limitations, which ran between the filing of the original petition and the Motion to Amend.

In his Objections, Petitioner admits these claims do not relate back, but claims they come within a miscarriage of justice exception to the statute of limitations. In *Souter v. Jones,* 395 F. 3d 577 (6th Cir. 2005), the Sixth Circuit held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the

> court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995) ." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." Id. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Schlup, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" Id. at 321.

*Id.* The miscarriage of justice exception to procedural default was developed by the Supreme Court to excuse procedural default in presenting a claim in the state courts and has never been applied by the Supreme Court to a procedural default in presenting the claim in federal court. However, *Souter* is the governing law in this Circuit.

Nonetheless, the Woods' testimony does not satisfy the requirements of *Schlup v. Delo*. First of all, it is not new evidence. It was available at the time of Petitioner's trial, although it was not presented to the trial jury for reasons which do not, as determined above, amount to ineffective assistance of trial counsel. Secondly, for the reasons stated by the Second District Court of Appeals, it is not strong evidence of actual innocence. Even the excerpts presented to the Second District are, as it found, ambiguous in their impact on Petitioner's claim of innocence.

Because Petitioner is not entitled to equitable tolling by virtue of actual innocense (the theory of *Souter* decision), his Third and Fourth Grounds for Relief are barred by the statute of limitations.

**Third Objection: Grounds One and Two Are Not Barred by Procedural Default**

The original Report and Recommendations recommended dismissing Grounds One and Two are procedurally defaulted by Petitioner's failure to present them in a timely appeal to the Ohio Supreme Court, precisely the procedural default upheld in *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).

In his Objections, he claims he had sufficiently distinguished *Bonilla* in his Traverse. However, the Traverse argues in terms of the exhaustion doctrine and the fair presentation doctrine, rather than the procedural default doctrine.  Petitioner is correct in his claim that he has exhausted his available state court remedies and in his further claim that he fairly presented to the Ohio Supreme Court the claims he makes here.  That is not enough.  As he himself recognizes in the Traverse, the Ohio Supreme Court did not decide his claims on the merits, but rather applied against him its rule requiring that an appeal be brought within forty-five days.  Petitioner failed to do that; regardless of the content of his filing with the Ohio Supreme Court, it was not timely made.  That is precisely the default the Ohio Supreme Court found against Bonilla, regardless of the content of his filing.  And the Ohio Supreme Court's timeliness rule was held in the reported Sixth Circuit decision to be an adequate and independent state ground to bar the appeal, regardless of its content.

Aside from claiming he had no procedural default, Petitioner claims in the alternative that his procedural default can be excused because he is actually innocent.  The miscarriage of justice/actual innocence exception to procedural default is well established, but it is of no avail to Petitioner here.  For the reasons given above as to his Second Objection, he cannot satisfy the *Schlup* gateway requirement: his evidence is neither new nor strong within the meaning of *Schlup*.

**Conclusion**

For the reasons given above, it is again respectfully recommended that this case be dismissed with prejudice and Petitioner be denied a certificate of appealability and leave to appeal *in forma pauperis*.

November 7, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge
